Good morning, Your Honors. Good morning. May it please the Court. I am Stephen M. Birnbaum, appearing on behalf of the appellant, William Bowden. We come before this Court and contend that the trial judge in the underlying case has committed legal error in the method of determining that my client should have been awarded 10% disability of each upper extremity. The legal error lies with the Court below and the Benefit Review Board equating impairment that is produced by a doctor's rating under the American Medical Association's Guides to the Evaluation of Permanent Disability with loss of use as it is used in the Act to calculate permanent partial disability under Section 8 sub c sub 19. Counsel, since you gave us a little time here, and I get, you know, the Fourth Circuit has a case, the Gilchrist case, which appears to be on all fours. We don't have a case. Why shouldn't we apply the reasoning of the Gilchrist case? Well, the Gilchrist case, Your Honor, is clearly distinguishable because Gilchrist has a claimant before it that has actually asked for a loss of wage earning capacity. We are not asking for a loss of wage earning capacity in this case, Your Honor. In fact, my client readily admits that he has made more money than he was making before the injury. Gilchrist deals with the issue of whether or not someone can ask for a loss of wage earning capacity. We are asking for an augmentation of the way that the AMA guides are used in order to calculate a loss of use under the section. What's your bottom line? What are you saying that you should have received monetarily that you did not receive? Your Honor, we contend that the judge should have considered industrial factors in addition to the impairment. Wage earning capacity? No, Your Honor. No, Your Honor. We are contending that under the AMA guides, the impairment rating uses in its own definitions non-industrial factors to come out with impairment ratings in addition to what the doctors find. Such as? Non-industrial factors. What are you calling? Such as the ability to take care of oneself, the ability to sit and stand, the ability to take care of oneself in terms of their bodily functions. The AMA guides in their first chapter says that they do not use industrial factors to come to their impairment rating. Okay. But he appears not to be impaired because he's making more money now than he was before. Are you talking about future potential? No, Your Honor. Judge Rawlinson, what's your bottom line? The bottom line is that our client's job in terms of how it's performed is a factor that should be considered in understanding how affected he is by the disability. We're not saying that he loses money as a result of this in terms of wage loss. What we are saying is that when he does his job, it should be considered what kind of job he has. So, pardon me, counsel, so if we had evidence of technological advancement and it would be easier for him to do his job notwithstanding his industrial impairment, then he should get a lessened amount of industrial impairment. That's your position? That could be a result, Judge Beha. That could be a result. We are not saying it doesn't cut both ways, but we are saying that the guides themselves say that industrial factors are not taken into account. Therefore, under Section 19 of C-19 of the Act, what we have is an impairment for non-industrial loss of use. Counsel, let me ask you this. Aren't those considerations built into the schedule? They would be built into the schedule if you were talking about not using the AMA guides. We all know that judges are allowed to use any method they want in order to calculate disability. Not in contradiction to the statute, though. No, not in contradiction to the statute. If the statute contains a schedule that has already encompassed the extent of the impairment, how can we tinker with that? We're not tinkering. We're tinkering. What we're doing is we are saying that if we only if we use the AMA guides. This is a very narrow concept. We are saying that only if you use the AMA guides, then you must follow the rules that the guides tell you to follow. What's your best case authority for the proposition that the court must adhere strictly to the AMA guides? Your Honor, that is not our proposition. Our proposition is that the court may use any reasonable method of coming to the calculation. What we're saying, Your Honor, is that if they use the guides. Right. Then it would be nonsensical to not follow. I'm asking you what's your best case authority for that proposition that once a body elects to use the AMA guides, it must be followed strictly. What's your best case authority for that argument? Your Honor, I don't use case authority. What I'm using is logic. Logic tells us that if you're going to use a scientific method, which the AMA guides are supposed to be, you have to follow all their steps. That's what we're saying. Counsel, isn't the AMA guide required to be used by section 902.10? The AMA guides are required to be used in hearing. We don't have to look at the case. We just have to look at what Congress says. Your Honor, in two instances under the Act, the AMA guides are required to be used. In all other instances, they're not required to be used. But that really goes to the point of whether or not they're supposed to be used, not to how they are used. Before we leave that point, is it your proposition that for, I mean, are you saying for a scheduled injury, the AMA guides have to be used? Is that your argument? No, Your Honor. I don't think so. I'm sorry. I'm not making myself clear. What I'm saying is, is that if you use the AMA guides, if you want to follow, if you elect to do that, if the fact finder elects to do that, if you don't use them the way that the AMA says to use them, then how can they be used? And the AMA... Guides, perhaps? Well, they are guides. They are to be used as a method of calculation. The AMA says that you are, it says to the doctor you're supposed to measure this, you're supposed to measure that. Then it says that we do not stand for the proposition that this measures industrial loss of use. It says that we have figured into the calculations only non-industrial use. What I'm trying to do is bridge the gap between the non-industrial loss of use and the loss and the industrial loss of use that our Act tells us we must come to. Did you want to save any time for rebuttal? I just saved a minute, Your Honor. Could you address why the Castro case isn't binding upon us? Judge Schwartzer found that the knee impairment, I think it was 17%, was a scheduled injury. So as far as that went, that was all that Mr. Castro was entitled for, for the scheduled injury, right? Your Honor, we do not argue that we should go outside the schedule. We only are saying that when you have a scheduled disability and when you use the AMA guides, that the AMA guides must be used properly in order to come to an accurate calculation. And in order to use them properly and to get to where Section 19 wants us to go, we must translate from non-industrial loss of use to industrial loss of use. And that means we need to consider industrial factors, which the guides do not. All right. Let me just say, 908C19 says specifically that compensation for partial loss of use is to be for the proportionate loss of use of the member, in this case 10%. How do you respond to that? You're saying it's in addition to that? No, Your Honor. What I'm saying is, is that the judge in our case used the AMA guides to come to that last step of going from non-industrial loss of use or proportion to industrial use, because he would not consider the industrial factors that should not be barred. The Gilchrist case, the PEPCO case, do not comment whatsoever on the AMA guides, do not comment on how loss of use should be figured. Those two cases, which we accept as the law in terms of being restricted to the schedule, all those cases say is that you cannot calculate loss of wagering capacity. Counsel, I thought the judge relied on the rating that was done by the treating physician and not the AMA guides. Where in the record are you saying that the judge relied on the AMA guides to the exclusion of the rating by the physician? With all due respect, Your Honor, I think the record does reflect that the judge used the AMA guides and only used the AMA guides, which the doctor calculated from. In other words, the doctor calculated from the AMA guides. So I think the record will reflect that the judge did only use the AMA guides. We're taking up your time, but what the bottom line here is that physical impairment is not enough. You need to use the industrial impairment. The non-industrial. No, the industrial factors, which Your Honor, I would argue are also physical factors. The physical factors of how you do your job, they're not economic factors. I don't know why those were considered to be economic factors. How you do your job, how you use the motions of your hands and your legs are physical factors. That's what the judge, we're asking the judge to do. All right, counsel. You've exceeded your time. We will give you one minute for rebuttal. Thank you, Your Honor. May it please the Court. Derek St. Pierre on behalf of the Respondent Marine Terminals Corporation. I want to take my oral argument to address two brief issues. The administrative law judge's credibility determination was essentially dispositive on this entire issue. Judge Karst in his decision very clearly valued the testimony of the claimant's treating physician, Dr. Wu, and actually held it to the extent that he found it much more credible than the other physician, Dr. Atkins, in this matter. Well, let's assume he's correct in that. Isn't this case distinguishable, as opposing counsel said, from Gilchrist and Pepco? I would disagree. I actually think that the Gilchrist-Pepco line of cases would actually bind to some Gilchrist, although it is a Fourth Circuit case, if you look at it in conjunction with Pepco, the two of them preclude the consideration of economic effects in assigning the disability for a scheduled injury. That's exactly what we have here. Do you equate economic effect with what counsel said was industrial factors? Oh, I noticed in his argument he neglected to say what actual factors we're including to adjust for. During the trial, he actually used age, occupation as the two means by which he were to adjust or transfer from impairment to disability. Those additional factors should be included. Perhaps counsel in his rebuttal will tell us the difference between economic factors as used in Gilchrist and industrial factors as used by counsel. Oh, I think at any point in which you actually relate this back to the actual job in chief and start individualizing these out, they do in effect become an economic factor, because what you're doing is adjusting for the individual's work and how that is going to actually play out in his job life. Counsel, what about opposing counsel's position that one must consider how a person does his or her job, how he uses his hands? Was that argument made below? To some extent it was, but I believe that the actual Congress in setting up this workers' compensation program, in 1927 they made a decision. And with the decision they made, they incorporated a schedule of losses for 20 enumerated injuries. Those actual enumerated injuries can only be determined based on the actual schedule. There's been a number of cases that say the economic effect of an enumerated injury is presumed when it's a scheduled injury. Conclusively presumed, some cases say. Absolutely. What I see happening here is actually the slippery slope with Petitioner's argument. If he wants to add on, that also is a double-edged sword where it would in effect at some point actually subtract from the presumed actual injury that the individual would receive on a scheduled injury. He conceded that. You know, in PEPCO, the injured worker was trying to recover for an unscheduled injury. Here that is not the case. The Petitioner just wants to clarify, to determine the degree of a partial permanent disability. Doesn't that distinguish, make PEPCO irrelevant to this case? No. I believe PEPCO itself stands for the fundamental concept that you have to go in terms of determining permanent partial disability, you have to go about it in one of two ways. Either under the scheduled injuries or wage loss for an unscheduled injury. The court says you can only do it one of two ways. You can't kind of elect between one or the other. What I would argue is that Gilchrist also modifies the actual PEPCO decision to say, and bring it a little bit further down the line, the amount of permanent partial disability for a scheduled injury. What part of the Act supports your argument? I would say the Act in total. I think if you actually look at the 1984 amendments, the Congress actually did opt to add the AMA guides, but that's only for two separate injuries in the case of hearing loss and also for voluntary retirement. Those are the only two points in the actual Act that actually refer directly to the AMA guides and you have to use them. But the opposing counsel's argument is once you elect to use them, then they have to be used in the manner contemplated. What's your response to that argument? I would say that the same introductory chapter that my opposing counsel referred to also offers some insight on that. And I would point specifically to section 1.8 of the AMA guides. Each administrative or legal system that bases disability ratings on permanent impairment defines its own process of converting impairment ratings into a disability rating. Defines its own process of converting impairment ratings into a disability rating. You wouldn't argue, as counsel does apparently, that the AMA amended the Longshoremen's Act? It's been 75 years since the actual Longshore and Harbor Workers Compensation Act was passed. They've had more than ample opportunity to mandate that the guides be used if they wish to. In fact, they opted to in two specific situations and for only those two specific situations. That argument that the Congress acts by not acting has been discredited in our circuits. Well, I would also say that there's been 25 years since PEPCO when Congress actually said, look, we recognize there may be some incongruous results with this, but fundamentally when Congress established its workers' compensation system, they wanted to do it with a degree of predictability for both the employer and the employee. And during that decision in 1980, they invited Congress to, if they had issues with the points they were making, to redress those. In 1984, there was a major revision. And the major revision in 1984, what they fundamentally did was limit the actual employees that are covered by the Longshore and Harbor Workers Compensation Act by excluding non-maritime employees who happen to work on the waterfront, like clerks, kitchen staff, those types of jobs. I mean, I think the actual, one of the Ninth Circuit decisions that, in this Long v. Director of the OWCP, gives a lot of insight to this. And I would point specifically to page, I'm not sure what page it is, but the quotation is, the purpose of the statute is to compensate for lost wage earning capacity. Schedules are set up not to put a price on certain parts of the body, but to ameliorate an otherwise intolerable administrative burden by providing a certain and easily applied method of determining the effect on wage earning capacity of typical and classifiable injuries. Doesn't that speak in favor of the petitioner here, that we construe the act liberally to help the injured worker? Isn't that what that is saying? I have two responses to that. I think, first of all, I think what that is saying is, in fact, the schedule is the means by which you translate impairment to disability, and that Congress intended that when they enacted it as a very simple arithmetic equation to convert from one to the other. My second response would be is that in PEPCO, the Supreme Court addressed exactly this issue, is that despite the fact that workers' compensation programs are generally construed liberally in favor of the employee, they're also bound by their original congressional intent, as well as the actual language used by the legislature in passing it. And despite that, there is no actual room within this act to interpret it in the way the petitioner requests. I think fundamentally what he's requesting is a legislative change as opposed to a judicial one. And I think that an analogy to the state compensation system is a pretty good one here in California, that in the state of California, in order to allow you to go use the AMA guides and convert the AMA guides impairment to disability, they enacted a 108-page book called the Schedule of Rating Disabilities in order to allow you to do that. Now, that 108-page book is very, very detailed as to what other factors you take into consideration and how you're supposed to actually make that translation. If the Congress wanted to do that in our situation here in 1927, they would have enacted similar legislation to provide some kind of guidance to do that. But they opted for a different one, and it was a unparalleled to the New York statute that was enacted just prior to 1927, and what was felt to be at that time one of the better workers' compensation systems. And if you look at the case history as well as the legislative intent of the New York statute, and then also the legislative intent of this statute, I think you'll find that the schedule is the means of converting from impairment to disability, and that no other additional factors are included. In summation, I would like to say there has been no showing of undercompensation of Mr. Bowden in this matter. Again, I would say fundamentally that the type of change requested by the Petitioner is one he should be making to the legislature and not to the judiciary branch. And I would ask that you affirm the decision of the administrative law judge, as well as the BRB in this matter, and find in favor of the Respondent. Thank you. Thank you, counsel. One minute for rebuttal. Thank you, Your Honor. Judge Beah raised the question of what economic factors were present, and I think in PEPCO, and in Gilchrist. No. My question was this. We cannot use economic factors on scheduled injuries pursuant to PEPCO and Gilchrist. Correct. What is the difference between what were economic factors impermissible in those two cases and your submission that we should use industrial factors? Yes, Your Honor. In those two cases, it was clearly the intent of the claimant, the injured worker, to raise the fact that they were undercompensated in their wages because of the injuries. That clearly is economic factors. In our case, and in cases under the AMA guides, what we are contending is that the factors that need to be looked at are not economic factors, need not be classified as economic factors. They are factors that include how someone does their job to do exactly what the AMA guides tell us to do, and that is to consider the factors that are in work. But how someone does his job, if you consider that, comes around to being how he cannot do his job and what losses in wages he will get. We're not giving industrial factors a meaning for pain and suffering, are we? No, we are not, Your Honor. It has to do with wage loss. Judge B, the every I'm sorry. I get called all sorts of things. I'm sorry. Everyone agrees, I believe, with this Act that disability is an economic concept. There's no way of getting around, and that both applies to scheduled and nonscheduled injury. Now, to lump everything in would mean that scheduled has no meaning whatsoever. Counsel, the bottom line is you want the industrial factors to be given a monetary value. That's the bottom line. We want, Your Honor, what we want is the industrial factors to be looked at that a judge not think it impermissible to look at industrial factors and fulfill what the AMA... But what would be the purpose of looking at those industrial factors? It's not an abstract exercise. Why would you want those factors looked at? To either increase or decrease the award. Isn't that correct? To measure industrial loss of use, as the Act says it should be done. In terms of dollars. Ultimately, all disability is in terms of dollars. There's no way of getting around that, Judge. I would just say this. PEPCO and Gilchrist were determined to stop a trend in terms of election of either one or the other, nonscheduled or scheduled awards. We are not doing that here. PEPCO said that the board was starting to get to a point where they were allowing people to ask for wage loss on scheduled injuries. PEPCO was decided to stop that. That is not the case here, Your Honor.
judges: Dw Nelson, Rawlinson, Bea